**FILED**
**Dec 01, 2020**
**10:13 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **JOHN WASHINGTON,** | ) | **Docket No. 2017-08-1205** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 69226-2017** |
| **UPS GROUND FREIGHT, INC.,** | ) | |
| **Employer,** | ) | **Judge Allen Phillips** |
| **And** | ) | |
| **LIBERTY MUTUAL INS. CO.** | ) | |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER FOR MEDICAL BENEFITS
### *(Decision on the Record)*

---

This case came before the Court for a Compensation Hearing on the record. Mr. Washington requested additional medical and temporary total disability benefits, and permanent disability benefits for a September 7, 2017 injury. UPS contended that he was not entitled to the requested benefits because he offered no medical evidence in support. After review of the record, the Court holds Mr. Washington is entitled to future medical benefits but nothing further.

### History of Claim

The incident at issue is undisputed; Mr. Washington was struck in the head by a metal bar while loading a truck. Afterward, UPS transported him to an emergency room, where a provider diagnosed a mild concussion.

UPS provided a panel of physicians, which, at Mr. Washington's request, included his personal physician, Dr. Cary Mettetal. Dr. Mettetal diagnosed post-concussion syndrome and a neck strain. He referred Mr. Washington to a neurologist and placed him off work until he saw one. Mr. Washington then went on his own to Panola Medical Center emergency room, where a CT scan of the head was interpreted as normal.

Based on Dr. Mettetal's referral, UPS provided Mr. Washington a panel of

1

neurologists. He chose Dr. Mohammed Assaf. However, before seeing Dr. Assaf, Mr. Washington returned to Dr. Mettetal, who continued the off-work restriction and said Mr. Washington needed a "personal care assistant" until he saw the neurologist, but he deferred to the neurologist as to continued need for the personal assistant.

On October 30, Dr. Assaf diagnosed post-concussion syndrome, low-back pain and cervical disc degeneration. He recommended an MRI of the low back and restricted Mr. Washington from work until it was performed. He did not believe Mr. Washington needed a personal care assistant. Mr. Washington's disagreement with those recommendations prompted Dr. Assaf to say he would not see him again. However, Mr. Washington did undergo the lumbar MRI; it was normal.

UPS paid Mr. Washington temporary total disability benefits (TTD) until December 6 but then stopped because of Mr. Washington's failure to follow Dr. Assaf's recommendations. Over the next few months, UPS offered Mr. Washington five more panels of neurologists. He chose one but then told the physician that Drs. Mettetal and Assaf had provided "unethical, unjust, illegal and inferior" medical treatment and that he had filed complaints against them. After that, the chosen neurologist refused to see him. Two other neurologists declined to see him, and he refused to choose any others. However, he continued to seek treatment at Panola on his own. Records of that treatment reveal that the providers thought Mr. Washington's complaints regarding his head injury did not justify emergency care. UPS initially paid for the treatment at Panola but then told Mr. Washington it would not authorize or pay for more.

The case remained in the same posture until an April 2018 Expedited Hearing. There, Mr. Washington requested payment for a personal care assistant, reinstatement of his TTD, payment of the emergency room bills, and further medical evaluation from a physician "outside" the workers' compensation system. He attributed symptoms of dizziness, migraines, depression, anxiety, PTSD, and spinal pain to the injury.[1] As to his refusal to choose another neurologist, Mr. Washington explained that he wanted replacements for "variety" and that the offered neurologists had "bad reviews."

For its part, UPS maintained that Mr. Washington had to choose one of the remaining neurologists if he wanted further treatment, he could not recover payment for the unauthorized emergency room treatment, and he submitted no proof that he needed a personal care assistant.

After the Expedited Hearing, the Court held UPS had complied fully with its statutory requirement to provide medical treatment by providing five panels of

---

[1] In support, Mr. Washington submitted articles that discussed an alleged link between a head injury and his conditions. UPS filed a Motion in Limine to exclude the documents, which the Court granted. Mr. Washington later asked the Court to reverse that holding and requested that the undersigned recuse himself. The Court denied both requests.

neurologists, but that Mr. Washington had not complied with his duty to choose one. Thus, the Court held that, if Mr. Washington wanted further treatment, he must choose another neurologist from the panels offered. Further, the Court held Mr. Washington did not prove he was entitled to payment of the emergency room bills, a personal care assistant, or reinstatement of TTD. Mr. Washington appealed.

While the appeal was pending, Mr. Washington went on his own to Baptist DeSoto Hospital in June 2018. There, he was diagnosed with multiple conditions including severe ketoacidosis, metabolic syndrome, morbid obesity, hypertension, diabetes, and chronic renal failure. The records contain no medical opinion relating those conditions to the work injury.

On August 2, 2018, the Appeals Board affirmed the Expedited Hearing Order and remanded the case. Then, on August 20, the Court entered a Status Hearing Order noting that the Expedited Hearing Order remained in effect and Mr. Washington had to choose another neurologist if he wanted treatment.

Afterward, throughout 2018 into 2019, Mr. Washington filed numerous motions that the Court denied, each time reminding Mr. Washington that he must choose another neurologist if he wanted further treatment.

Ultimately, in June 2019, UPS filed a Motion to Dismiss for Failure to Prosecute, arguing that Mr. Washington's continued refusal to choose a neurologist caused a barrier to the case proceeding. The Court denied the motion because Mr. Washington chose another neurologist one business day before the Court heard the motion.

That neurologist refused to see Mr. Washington, but he and UPS agreed to another, Dr. Alan Nadel. However, the evaluation was delayed, as Mr. Washington continued filing motions with the Clerk.

For example, in September 2019, he filed motions for an "unbiased" evaluation, for "back pay," and one asking that the Court deem him permanently and totally disabled (PTD). The Court denied all of them because Mr. Washington offered no legal bases for the requests. Then, Mr. Washington filed what he called "exhibits," another motion to deem him PTD, and a motion for a Compensation Hearing on the record. He also requested that UPS pay for his transportation to medical appointments. On January 3, 2020, the Court denied the motions but ordered UPS to pay the statutory mileage reimbursement for travel to medical appointments. Mr. Washington appealed.

On January 27, Mr. Washington finally saw Dr. Nadel, who recorded the history of injury. He also noted a lack of objective findings regarding its severity. Further, his examination revealed no significant findings. However, he noted Mr. Washington suffered from the conditions detailed in the June 2018 Baptist records. Dr. Nadel said none of them

3

were caused by Mr. Washington being struck in the head, an injury he described as mild and inconsequential.

Dr. Nadel recorded that Mr. Washington spent "90% of the time" complaining about the workers' compensation system and expressing his opinions as to the statutory definitions of permanent disability. He told Dr. Nadel that he had not seen a workers' compensation physician even though, as Dr. Nadel observed, he had seen Dr. Assaf. Because Mr. Washington was loud and aggressive, and at times Dr. Nadel said he felt threatened, he said he would not see him again. He also thought Mr. Washington was exaggerating his symptoms for secondary gain and did not provide an impairment rating.

On April 8, the Appeals Board affirmed the January 3 order. Mr. Washington then requested this on-the-record Compensation Hearing, and the Court referred the parties to post-discovery mediation. When it failed, the Court entered a Docketing Notice designating the record set forth in the Appendix and gave the parties an opportunity to object or add to it. UPS objected to parts of the record on grounds of improper foundation and/or hearsay. Mr. Washington filed documents that were duplicates of previous filings.

The record contains many filings by Mr. Washington that contain his personal opinions regarding his condition and that cite sources containing hearsay. He personally completed a Standard Form Medical Report (C-32) and submitted "sworn" statements of both him and a friend asserting he was totally disabled. The only medical records are from the hospitals and doctors described above.

On its review of the record, the Court gleans that Mr. Washington requests: TTD from when UPS stopped paying until he chose another neurologist in June 2019; payment of his outstanding medical bills at both Panola and Baptist; payment for a personal care assistant; and further medical evaluation from an "unbiased" physician. He also contends he is either permanently and totally disabled or "99%" permanently partially disabled. UPS argued that he offered no medical evidence supporting his requests.

**Findings of Fact and Conclusions of Law**

Mr. Washington bears the burden of proof on all elements of his claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a Compensation Hearing, he must prove those elements by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2019).

Mr. Washington must show his alleged injuries were caused by a specific incident arising primarily out of his employment at UPS. An injury arises primarily out of the employment only if the employee shows to a reasonable degree of medical certainty that his employment contributed more than fifty percent in causing it. "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely

4

than not considering all causes. Tenn. Code Ann. § 50-6-102(14)(A)-(D).

Looking to those requirements, the Court finds that a specific incident occurred: Mr. Washington was struck in the head by a metal bar on September 7, 2017. Further, the Court finds by a preponderance of the evidence that Mr. Washington sustained a mild concussion as a result based on the records from Panola and Drs. Mettetal, Assaf, and Nadel. However, evidence of any injury stops there; the record does not support a finding that any of Mr. Washington's other conditions are work-related.

To the contrary, the Court finds nothing in the record linking Mr. Washington's other conditions to his head injury. Moreover, Dr. Nadel provided the only direct causation opinion in the record and specifically said Mr. Washington's other conditions were not work-related. Thus, Mr. Washington did not prove by a preponderance of the evidence that he is entitled to any benefits except those related to a mild concussion.

As to those benefits, the Court first considers whether Mr. Washington can recover additional TTD. In that regard, the Court finds no admissible medical opinion that he was disabled from working after UPS stopped paying TTD in accordance with the law. Though he finally chose another neurologist in June 2019, he still must establish a causal connection between his injury and his inability to work. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). He did not do so.

As to permanent disability, the Court finds nothing in the record regarding any permanent impairment Mr. Washington might have sustained as a result of the injury. Dr. Nadel said Mr. Washington sustained only a mild, inconsequential head injury, and neither he nor the other doctors provided an impairment rating. It follows then that Mr. Washington did not prove a permanent injury and cannot recover any type of permanent disability benefits.

As to medical benefits, Tennessee Code Annotated section 50-6-204(a)(1)(A) requires UPS to furnish Mr. Washington medical treatment made reasonably necessary by his injury. The law requires no more. Thus, UPS is not responsible for payment of any unpaid medical bills from Panola or Baptist, as it did not authorize that treatment. Further, as the Court previously found, there is no proof that Mr. Washington needs a personal care assistant or transportation to medical appointments.

However, UPS *is* responsible for future medical treatment of the mild concussion related to the incident of September 7, 2017. This is true, even though the injury did not cause permanent impairment. Tenn. Code Ann. § 50-6-204(b)(1); *Barron v. State Dep't of Human Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006). To comply with that obligation, UPS may designate the authorized provider for future medical treatment.

**IT IS, THEREFORE, ORDERED** as follows:

5

1. The Court denies Mr. Washington's request for additional temporary total, permanent partial, or permanent total disability benefits.

2. The Court denies Mr. Washington's request for payment of medical bills for unauthorized treatment, a personal care assistant, or transportation to medical appointments.

3. UPS shall provide Mr. Washington future medical benefits under Tennessee Code Annotated section 50-6-204 (a)(1)(A) for the concussion related to the September 7, 2017 incident. UPS shall designate the physician to provide that treatment.

4. UPS shall pay $150 costs to the Court Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019).

5. UPS shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

6. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED December 1, 2020.**


_____*Allen Phillips*_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**


**APPENDIX**

Technical record:

1. Petition for Benefit Determination (October 30, 2017)
2. Dispute Certification Notice (DCN) (December 15, 2017)
3. Expedited Hearing Order (April 27, 2018) (including the Technical Record)
4. Order Denying Recusal (May 9, 2018)
5. Appeals Board Order Affirming in Part, Dismissing in part and Remanding Case (August 2, 2018)
6. Order Denying Motion for Urgent Medical Treatment (February 5, 2019)
7. Order Denying Motion for Another Panel Physician (February 14, 2019)
8. Order Denying Motion for Another Panel (March 25, 2019)

9. Order Denying Motion to Dismiss for Failure to Prosecute (July 3, 2019)
10. Order Denying Motions (September 18, 2019)
      a. Motion for back pay
      b. Unbiased Independent Medical Evaluation
      c. Request for permanent total disability
11. Order for Transportation Expenses and Denying Other Motions (January 3, 2020)
      a. Characterization as permanently and totally disabled
      b. Denying Compensation Hearing on the record at that time
      c. Denying exhibit filings on grounds they were premature
12. Appeals Board Order Affirming January 3 Order (April 8, 2020)
13. Order Allowing Amendment of Dispute Certification Notice (May 7, 2020) (adding issues of compensability and permanent disability)
14. Order Setting Scheduling Hearing (July 2, 2020)
15. Order Regarding On-the-record Determination (July 15, 2020)
16. UPS's Objections to Designated Record (filed in response to Docketing Notice)
17. UPS's Compensation Hearing Memorandum (filed in response to Docketing Notice)
18. Order Granting UPS's Motion in Limine (April 6, 2018) (as requested in UPS's response to Docketing Notice)
19. Post-Discovery DCN (September 16, 2020) (as requested in UPS's response to Docketing Notice)

Exhibits:
      1. Affidavit of John Washington, including his statement of demands
      2. Affidavit of Sarah Moore, including attachments
      3. First Report of Work Injury
      4. Wage Statement
      5. Employee's Exhibits A, B, C, D, E, F, I, M, O, P, R and S (*Excluded before Expedited Hearing by Motion in Limine and marked for identification only*)
      6. Employee's Exhibits G and W (*Handwritten statements on these records were excluded by Motion in Limine before Expedited Hearing*)
      7. Collective Medical Records with Index of Concentra, Methodist Hospital, Panola Medical Center, Mettetal Family Medicine and Mohammed Assaf
      8. Employee's Exhibit H, K, L, N, Q, T, U, V and X
      9. Letter from UPS to Mr. Washington regarding work status
      10. E-mail from Mr. Washington to Sarah Moore regarding Dr. Assaf's discontinuing treatment
      11. Additional Emergency Room records
      (Exhibits 1-11 were introduced at the Expedited Hearing).

12. Medical Records of Baptist DeSoto Hospital-June 18 through July 5, 2018 (*filed by Mr. Washington on March 22, 2019 and including a medical authorization allowing UPS to obtain the records*)
13. Medical Records of Dr. Alan Nadel (*filed by UPS on July 27, 2020 and added as pages 192-195 to the Collective Medical Records marked as Exhibit 7 above*)
14. Mr. Washington's Filings on the following dates, identified with TN Comp Doc Id numbers for clarity:
    a. May 4, 2020 (39120, 39121, 39143, 39152)
    b. July 3, 2020 (41713).
    c. July 5 (41756)
    d. July 8 (41902)
    e. July 14 (42270, 42271)
    f. July 15 (42326, 42327, 42347)
    g. July 16 (42349)
    h. July 17 (42396)
    i. July 19 (42397)
    j. July 27 (42793, 42794)
    k. August 24 (45195, 44091)
    l. September 28 (45783)
15. Transcript of Mr. Washington's Expedited Hearing testimony (as requested in UPS's response to Docketing Notice)

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on December 1, 2020.

| Name | Via Email | Service sent to: |
| --- | --- | --- |
| John Washington, Self-Represented Employee | X | Washingtonjohn73@gmail.com |
| Garrett Estep, Attorney for Employer | X | gestep@farris-law.com |

_Penny Shrum_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

8



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____      2. Address: _____

3. Telephone Number: _____      4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month  Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone       $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing        $ _____ per month

Gas              $ _____ per month    Child Care      $ _____ per month

Transportation   $ _____ per month    Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____        (FMV) _____

Other                   $ _____        Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                    RDA 11082